## 48927. THE STATE v. DAVID.

HALL, Presiding Judge. The State of Georgia, proceeding under Section 1 (d) of Ga. L. 1973, p. 297 et seq., appeals from a judgment and order of the Criminal Court of Fulton County, which sustained David's motion to suppress the state's evidence in this airport-search case. At the hearing on the motion, the facts were presented by stipulation which in its entirety was as follows: "The State and the Defendant stipulate that the search and seizure at issue occurred on January 7th, 1973, at the Hartsfield International Airport, in Fulton County, Georgia, at the F Concourse entrance to the loading ramps at said Airport; that the Defendant was accompanying a ticketed passenger, and did not have a ticket himself; that the Defendant had committed no act that would otherwise attract attention to himself; that the Defendant walked through the only publicly available entranceway, and further, that when he did so a metal detecting device was set up, alerting airport security officers who stopped the Defendant, asked the Defendant to remove his hand from his jacket; that the Defendant then informed airport security officers that he had a weapon; the airport officers then removed the weapon from the Defendant, and then advised him of his Miranda rights under the Constitution."

In support of the trial judge's decision, David argues that search of persons upon the basis of the results shown by a metal detector is unconstitutional whether such persons be passengers or non-passengers, and that written or oral consent is required to legitimize the search. He likens the use of the airport magnetometer to an indiscriminate patrolling of the streets by policemen armed with metal detecting devices, who without probable cause stop and search all passers-by who register on the device. He finally urges that the threat of air piracy does not suspend constitutional guarantees regarding search and seizure.

The state urges reversal, citing United States v. Bell, 464 F2d 667 (2d Cir. 1972); United States v. Slocum, 464 F2d 1180 (3d Cir. 1972); and United States v. Epperson, 454 F2d 769 (4th Cir. 1972) cert. den., 406 U. S. 947 (92 SC 2050, 32 LE2d 334). All three

of those cases upheld convictions of ticket-carrying passengers for possession of contraband discovered during airport searches. These federal decisions are not binding upon this court. However, we consider their reasoning persuasive, and in the absence of any pertinent Georgia authority we are free to follow it.

In Epperson, the Fourth Circuit held that the exposure of airplane passengers to magnetometers constituted a "search" under the Fourth Amendment, but such search even without a warrant was not unreasonable in view of the threat of air piracy. Thus, "When the high metal indication of the magnetometer was not satisfactorily explained by Epperson, the subsequent physical 'frisk' of his jacket was entirely justifiable and reasonable under Terry [Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)]. At this stage of the encounter the reasonable fear of the marshal for the safety of airline passengers increased and he was entitled, for their protection, to conduct a carefully limited search of the clothing of Epperson in an attempt to discover weapons which might be used for air piracy. Since the use of the magnetometer was justified at its inception, and since the subsequent physical frisk was justified by the information developed by the magnetometer, and since the search was limited in scope to the circumstances which justified the interference in the first place, we hold the search and seizure not unreasonable under the Fourth Amendment." 454 F2d 772.

On this reasoning the Fourth Circuit upheld Epperson's conviction of violation of a federal statute prohibiting the carrying of a concealed weapon onto an aircraft. A similar approach was later taken by the Second Circuit in deciding Bell, in which, citing Epperson, the court wrote "the contention of appellant that the use of the magnetometer constituted an unreasonable search is baseless. . . In view of the magnitude of the crime sought to be prevented, the exigencies of time which clearly precluded the obtaining of a warrant, the use of the magnetometer is in our view a reasonable caution." 464 F2d 673. Shortly thereafter, the Third Circuit decided Slocum, writing that "the short answer to defendant's challenge directed against use of the magnetometer is provided by United States v. Epperson. [cit.]" 464 F2d 1182.

All three of these cases further hold that, the magnetometer being a lawfully employed device, when a passenger sets off a suspicious magnetometer reading and is unable or unwilling to give a satisfactory explanation of that fact, he may be frisked for

weapons without further ado. We agree with and adopt both of these rules, and this disposes of David's contention that a search or frisk based upon a magnetometer reading is unconstitutional. Answering his argument that the threat of air piracy does not suspend constitutional guarantees, we have not said that it does. It is not "searches" which are constitutionally forbidden, but "unreasonable" searches. The legitimate governmental interest in protecting against air piracy is sufficient to render properly limited searches for that purpose reasonable.

We must now consider whether the general rules we have outlined above should apply not only in the passenger-boarding context for which they were written, but also on facts such as those presented here, concerning a person who had not bought a ticket and who was not on the boarding ramp but was "at the F Concourse entrance to the loading ramps. . ."

In the interest of general security, airport officials may limit access to the area of the aircraft, as distinguished from the more public areas of the lobby, ticket counters and other public conveniences which are not involved here. Incident to limiting this access, officials may set up detection devices to screen persons approaching the more sensitive areas. It is not unreasonable to set up a magnetometer at a concourse entrance to loading ramps for this purpose, nor is it unreasonable—indeed, it would appear most logical—to subject to a magnetometer scan anyone proceeding past that point, whether he be a ticketed passenger or merely a wellwisher. Airport authorities are not required to conclude that all those who intend to commandeer an airplane, an act which may be committed while the plane stands at the ramp, will purchase tickets.

In light of what has been said, it follows that there was nothing unreasonable in placement of the magnetometer or in the airport security officers' stopping David when the device gave an alert and asking him to remove his hand from his pocket, which might have been thought to contain a weapon. Under the reasoning of Epperson, he could then have been required to explain satisfactorily what device in his possession gave the high reading, or to submit to a frisk.[1] Instead, the stipulated facts

---

[1] The facts presented here do not require a decision today on the maximum permissible extent of a search conducted under these circumstances.

show that David immediately volunteered that he was carrying a weapon. Seizure of the weapon was justified. See *Bethea v. State,* 127 Ga. App. 97, 98 (192 SE2d 554).

The "search" by magnetometer and seizure having been lawful, the trial court erred in granting David's motion to suppress all oral or tangible evidence obtained thereby.

*Judgment reversed. Deen and Stolz, JJ., concur.*

Submitted January 16, 1974 — Decided February 12, 1974.

*Hinson McAuliffe, Solicitor, James L. Webb, Charles Hadaway, Frank A. Bowers,* for appellant.

*Kirby G. Bailey,* for appellee.