A96A0609. PERRY v. SOIL REMEDIATION, INC. et al.
(471 SE2d 320)

RUFFIN, Judge.

Shawn Perry suffered injury when, according to his suit, a vehicle in another lane struck an accumulation of sand and oil on the road, lost control, and hit his motorcycle. Claiming that oily waste spilled from a transport truck en route to a landfill and caused the accident, Perry sued the owner-driver of the truck he claims caused the spill and Soil Remediation, the company he claims shipped the waste. Soil Remediation moved for summary judgment, claiming it had no vicarious liability for the acts of its truck driver, an indepen-

---

dent contractor. The trial court agreed. We reverse because questions of fact remain as to whether Soil Remediation had a nondelegable duty to ensure proper transport of its waste products, bringing this case within an exception to the independent contractor rule.

Summary judgment is proper only if the pleadings, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). The standard for granting summary judgment is found in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

1. The trial court properly found the truck driver, Mitchell, to be an independent contractor. "The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer in the time, manner, and method in the performance of the work. . . . [Cit.]" (Punctuation omitted.) *Yow v. Fed. Paper Board Co.*, 216 Ga. App. 652, 654-655 (2) (455 SE2d 372) (1995). The key is to determine whether the contractor is truly independent or whether he is simply the employer's alter ego. *Loudermilk Enterprises v. Hurtig*, 214 Ga. App. 746, 747 (449 SE2d 141) (1994) (physical precedent only).

The affidavit of Soil Remediation's president alleged Mitchell to be an independent contractor and not an employee. "A denial of the existence of an agency relationship may constitute an uncontradicted fact which will sustain a motion for summary judgment." (Citations and punctuation omitted.) *McDaniel v. Peterborough Cablevision, Ltd.*, 206 Ga. App. 437, 439 (425 SE2d 424) (1992); *Hampton v. McCord*, 141 Ga. App. 97, 99 (1) (232 SE2d 582) (1977). Whenever it needed to make a shipment, Soil Remediation contacted Mitchell or other independent truckers. It paid Mitchell by the job, on the basis of mileage and time spent at the various delivery sites. Mitchell owned or leased his own equipment to haul the waste and carried his own workers' compensation and liability insurance. The truck he drove bore his name on its door. Soil Remediation did not control the routes Mitchell took to or from shipment sites, and Mitchell was free to work for others. Under these circumstances, the trial court did not err in finding Mitchell to be an independent contractor as a matter of law. *Slater v. Canal Wood Corp. &c.*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986); *Coastal Timberlands v. Brown*, 141 Ga. App. 800, 801 (234 SE2d 373) (1977). "[Mitchell] clearly functioned independently of [Soil Remediation] under the circumstances of this case. . . ." *Bowman v. C. L. McCord Land &c.*, 174 Ga. App. 914, 915

(1) (331 SE2d 882) (1985).

Perry points out that, on one occasion when Mitchell's liability insurance expired, Soil Remediation paid for a renewal policy out of money it owed him and would not let him operate until the insurance became effective. He also alleges Soil Remediation controlled Mitchell by teaching him the proper way to fill out necessary paperwork and what to do in case of a spill. But these actions, designed to ensure Mitchell complied with legal requirements, did not alter the parties' relationship. "These circumstances provide no indicia of a master/servant relationship. [Cit.]" *Slater*, supra at 880 (1). Perry has not countered Soil Remediation's denial of Mitchell's agency with direct evidence or with circumstantial evidence sufficient to create a genuine issue of material fact as to the parties' relationship. See *Bennett v. Miller*, 188 Ga. App. 72, 74 (371 SE2d 903) (1988).

2. Although Mitchell is an independent contractor, the evidence is insufficient to conclude Soil Remediation may not be held liable for any spill he caused. Pursuant to OCGA § 51-2-5 (4), an employer is liable for the negligence of an independent contractor who is performing the employer's nondelegable statutory duty. *Owens v. BarclaysAmerican/Mtg. Corp.*, 218 Ga. App. 160, 162 (2) (460 SE2d 835) (1995); *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994); *Royal Frozen Foods Co. v. Garrett*, 119 Ga. App. 424, 425 (1) (167 SE2d 400) (1969), rev'd on other grounds, 225 Ga. 533 (170 SE2d 294) (1969). Soil Remediation may have had such a duty to ensure the transportation of its waste products in accordance with applicable laws and regulations.

Soil Remediation is a "materials recovery facility" which must dispose of its wastes in compliance with the Georgia Comprehensive Solid Waste Management Act, OCGA § 12-8-20 et seq., and regulations issued pursuant to it. See OCGA § 12-8-22 (26); Ga. Comp. R. & Regs. 391-3-4-.01 (56).[1] The legislature enacted this law "in furtherance of its responsibility to protect the public health, safety, and well-being of [Georgia's] citizens. . . ." OCGA § 12-8-21 (a). Assuming Soil Remediation shipped waste by Mitchell, Mitchell was himself required to obtain a permit from the State and comply with the Act and its rules and regulations. OCGA §§ 12-8-22 (34), 12-8-24 (a); Ga. Comp. R. & Regs. 391-3-4-.02.[2]

---

[1] A "recovered materials processing facility" is required to dispose of all solid waste it generates in compliance with "all applicable laws and regulations relating to such solid waste." OCGA § 12-8-22 (26); Ga. Comp. R. & Regs. 391-3-4-.01 (56). "Solid waste" includes "any garbage or refuse . . . and other discarded material including solid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations and from community activities. . . ." OCGA § 12-8-22 (33); see also Ga. Comp. R. & Regs. 391-3-4-.01 (65).

[2] That regulation reads, in relevant part: "(1) Permits required: no person shall engage

To properly dispose of its waste, Soil Remediation was required to comply with Ga. Comp. R. & Regs. 391-3-4-.04 (5), which states: "The owner or occupant of any premises, . . . industry, or similar facilit[y] shall be *responsible* for the collection and *transportation* of all solid waste accumulated at the premises . . . to a solid waste handling facility operating in compliance with these Rules *unless arrangements have been made for such service with a collector operating in compliance with these Rules.*" (Emphasis supplied.) Accordingly, Soil Remediation had a statutory duty to transport the waste and could be relieved of this responsibility only if Mitchell complied with the rules. The record does not demonstrate Mitchell had the necessary permit. Furthermore, questions of fact exist as to whether he complied with Ga. Comp. R. & Regs. § 391-3-4-.06 (3) (a) (3), which requires that "vehicles or containers used for the collection and transportation of solid waste shall be loaded and moved in such manner that the contents will not fall, leak or spill therefrom. . . ."

These regulations carry the force of law. OCGA § 12-8-30.7; see *Garrett*, supra at 425. They concern themselves with possible spills and leaks from vehicles transporting solid waste and are, therefore, applicable to this situation. It is apparent the regulations are designed to ensure that persons who dispose of solid waste do so only through properly regulated channels. If Soil Remediation did not ensure Mitchell was properly registered with the State, it remained responsible for any injury resulting from his transportation of its solid waste in violation of the regulations.[3]

The fact that regulations create this duty distinguishes this action from cases such as *Tanner v. USA Today*, 179 Ga. App. 722, 723 (2) (347 SE2d 690) (1986), and *Newsome v. Dunn*, 103 Ga. App. 656, 658 (2) (120 SE2d 205) (1961), in which no duty existed to ensure an independent hauler had registered with the Public Service Commission. This case is closer to decisions such as *Wright v. Transus, Inc.*, 209 Ga. App. 771, 772 (1) (434 SE2d 786) (1993), and *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706, 711-712 (371 SE2d 252) (1988), in which federal regulations designed to ensure that trucking companies take responsibility for their drivers deprived the companies of the "independent contractor" defense.

---

in solid waste handling . . . [except for certain exempt individuals and those qualifying under Rule 391-3-4-.06] without first obtaining a permit from the [Department of Natural Resources] authorizing such activity. (2) . . . Solid Waste Handling Permits shall be required for . . . persons engaged in the collection, transportation, . . . or disposal of solid wastes. . . ." The statutes noted give similar directives. Another regulation, Rule 391-3-4-.01 (11), defines a "Collector" to include any person who transports solid wastes from "industries," "businesses," and "similar locations."

[3] Soil Remediation could also avoid responsibility by showing Mitchell complied with Ga. Comp. R. & Regs. 391-3-4-.06 (1), which allows a permit-by-rule.

Neither does the case of *Dinsmore v. Cherokee County*, 177 Ga. App. 93, 94 (338 SE2d 523) (1985), dictate a different holding here. In *Dinsmore*, we held that *even if* the Solid Waste Management Act created a general duty of safety, the county retained sovereign immunity in the absence of a statute specifically waiving that immunity.

"[A] person can be an independent contractor in one part of his activity and an employee in another." (Citations and punctuation omitted.) *Williams v. Thurston Paulk, Inc.*, 216 Ga. App. 621, 622 (1) (455 SE2d 132) (1995); *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904, 906 (219 SE2d 593) (1975). The regulations at hand dictate that, in the limited area of ensuring its waste is properly transported, Soil Remediation must either use a properly registered or permitted waste collector or remain "responsible" for the waste until it reaches a registered landfill. Although these regulations would not make Soil Remediation responsible for every possible catastrophe in transit, it would remain responsible for ensuring transportation of the waste in compliance with applicable rules and regulations and could be responsible for an injury proximately caused by Mitchell's violation of those regulations. Thus, the trial court erred in granting summary judgment to Soil Remediation.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 13, 1996.

*Sutton & Associates, Berrien L. Sutton*, for appellant.

*Young, Thagard, Hoffman, Scott & Smith, F. Thomas Young, Daniel C. Hoffman, Tillman, McTier, Coleman, Talley, Newbern & Kurrie, George T. Talley, J. Converse Bright*, for appellees.