A96A0903. SPARKS v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al.
(478 SE2d 923)

RUFFIN, Judge.

Tim Sparks sued the Metropolitan Atlanta Rapid Transit Authority ("MARTA") and Millar Elevator Service Company ("Millar") for injuries he allegedly sustained at a MARTA station when the escalator he was riding malfunctioned. According to Sparks, he was gripping the escalator handrail when it slipped backwards, causing him to fall and sustain injuries. Sparks appeals the trial court's grant of summary judgment to MARTA and Millar. For reasons which follow, we affirm.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

In this case, Sparks alleged that MARTA, the owner and occupier of the premises, was negligent in failing to inspect and maintain the escalator properly. Sparks further alleged that Millar, the company hired by MARTA to inspect and maintain the escalator, negligently failed to perform its duties.

1. The standard of care applicable to common carriers is applicable to MARTA in this case. See *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456 (2) (475 SE2d 188) (1996). That standard provides that "[a] common carrier of passengers is not an insurer of the safety of its passengers, but must exercise extraordinary diligence to protect the lives and persons of its passengers. [Cit.] Extraordinary diligence is defined as 'that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances.' [Cits.]" *Southeastern Stages v. Stringer*, 263 Ga. 641 (437 SE2d 315) (1993). This duty is non-delegable regardless of whether the common carrier contracts with a third

party to perform the maintenance and repairs, and in such cases the common carrier remains liable for slight negligence. *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994).

The extent of Millar's duty, as the maintenance provider, is less clear. In *Millar Elevator* we left undecided the issue of whether maintenance providers should be held to the same standard of care as common carriers. We did find, however, that " '[t]he amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it.' [Cit.]" *Millar Elevator*, supra at 458.

2. In this case, MARTA and Millar presented evidence showing they used extraordinary diligence in maintaining the escalator. That evidence revealed that on July 14, 1992 and July 31, 1992, Millar conducted regular bi-monthly preventative maintenance on the escalator. The evidence also showed that while there were seven calls concerning problems with the escalator between July 5, 1992 and August 5, 1992, Millar promptly responded and timely repaired all the reported problems by replacing the malfunctioning parts. Although Millar repaired a handrail on August 5, 1992, which was only eight days before Sparks' accident, that problem was completely unrelated to the malfunction which caused Sparks to fall.

According to John Story, the Millar employee who repaired the escalator on August 5, 1992, the escalator malfunctioned at that time because an axle bearing in the handrail drive assembly failed. Story stated in his affidavit that the life expectancy of an axle bearing is variable "with no way of predicting failure." Robert Lauer, the defendants' expert engineer, stated in his affidavit that the August 13, 1992 malfunction involved an idler wheel bearing failure. He stated that such bearings are "rugged" and "have a normal long life[,]" but that "there is no way to anticipate an impending failure." He further stated that the occasional failure of a handrail drive assembly bearing is inevitable and that even with the most extraordinary maintenance, periodic shutdowns are expected. Finally, Lauer stated that Millar's maintenance on the escalator complied with the most widely recognized and best industry standards.

In response to the defendants' motion for summary judgment, Sparks pointed to an "emergency call log" contained in the record which evidenced the seven calls concerning problems with the escalator. Sparks also pointed to the deposition testimony of a Millar employee who stated that even after escalators are repaired, he expects them to break again and that a malfunctioning escalator poses a danger to passengers. Finally, Sparks points to a Millar employee's statement that when a bearing malfunctions, Millar rou-

tinely replaces only the broken bearing and not all the bearings, even though replacing the entire bearing assembly or the entire escalator would extend the time between problems.

In light of the evidence presented by MARTA and Millar, the foregoing evidence presented by Sparks was insufficient to give rise to a triable issue. Although the escalator was expected to malfunction, required repairs, and was sometimes dangerous, these facts do not show that MARTA or Millar was negligent in this case.

This Court has long recognized that mechanical devices such as escalators " 'get out of working order, and sometimes become dangerous and cause injury *without negligence on the part of anyone.*' [Cit.]" (Emphasis supplied.) *Millar Elevator*, supra at 457-458. This evidence alone, without any showing of slight negligence, does not create a triable issue. Furthermore, Sparks presented no evidence showing that the defendants could have detected a possible failure of the bearing through any type of inspection. Cf. *Millar Elevator*, supra (evidence showed that on rare occasions a visual inspection could indicate a potential failure). To find the defendants liable in this case based on the evidence cited by Sparks, a jury would necessarily have to conclude that the defendants were slightly negligent in failing to replace the entire handrail assembly or even the entire escalator due to a malfunction of only one small component. Such conduct goes beyond what could be expected of even very prudent and thoughtful people under the same or similar circumstances. See *Southeastern Stages*, supra.

3. Relying on *Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797, 798 (2) (388 SE2d 920) (1989), Sparks asserts that the trial court erred in granting MARTA and Millar summary judgment because the evidence showed that they had superior knowledge of the malfunction and failed to warn him of it. We disagree.

. In *Ellis*, the plaintiff fell and was injured when the Sears escalator she was riding malfunctioned. The evidence showed that ten to fifteen minutes prior to the plaintiff's fall, her husband had a similar experience and informed a Sears' employee of the malfunctioning escalator. We reversed the trial court's grant of a directed verdict for Sears because the evidence showed that Sears had actual knowledge of the malfunctioning escalator for a ten- to fifteen-minute period and in that time failed to either remedy the dangerous condition or warn its patrons of the condition. Id.

In this case, however, Sparks presented no evidence showing that the defendants had any prior knowledge that the escalator was malfunctioning. Rather, the evidence discussed in Division 2 clearly showed that "there [was] no way to anticipate an impending failure." And, unlike the defendant in *Ellis*, the defendants in this case were not previously informed that the escalator was malfunctioning.

To the extent that Sparks asserts other errors in this enumeration, those assertions are deemed abandoned. See *West v. Nodvin*, 196 Ga. App. 825, 830 (4) (c) (397 SE2d 567) (1990). Such practice is unauthorized because it "creates a fair risk that ambiguity, misdirection, or confusion as to the errors asserted will occur, thereby giving rise to an increased likelihood of generating inadvertent appellate error." Id.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Smith, JJ., concur. McMurray, P. J., concurs in part and dissents in part.*

McMurray, Presiding Judge, concurring in part and dissenting in part.

I fully concur in Division 1, holding that the applicable standard of care is that of extraordinary diligence owed by common carriers, established at OCGA § 46-9-1. I also fully concur in Division 3, distinguishing the whole court decision in *Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797, 798 (2) (388 SE2d 920) on the basis of that defendant's actual knowledge of the hazard because that plaintiff's husband had already informed an employee of the malfunctioning escalator. But with respect to Division 2 and the judgment affirming the grant of summary judgment in favor of defendants Metropolitan Atlanta Rapid Transit Authority (MARTA) and Millar Elevator Service Company (Millar), I respectfully dissent.

"The rule applicable in common carrier cases is that whenever a carrier, through its agents or servants, knows or has [an] opportunity to know of a threatened injury, *or might have reasonably anticipated the happening of an injury*, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable. It is the common carrier's duty to use proper care and vigilance to protect passengers from injuries . . . that might reasonably have been foreseen and anticipated. Knowledge of the passenger's danger, or of *facts and circumstances from which that danger may reasonably be inferred*, is necessary to fix the carrier's liability in this class of cases. The carrier is *not* regarded as an *insurer* of his passenger's safety against every possible source of danger; *but* he is bound to use *all such reasonable precautions as human judgment and foresight are capable of*, to make his passenger's journey safe and comfortable." (Citations and punctuation omitted; emphasis supplied.) *Southeastern Stages v. Stringer*, 263 Ga. 641, 642 (437 SE2d 315). The evidence, as recited by the majority, indicates that, in addition to regularly scheduled maintenance, there were seven times in the preceding two months when this particular escalator required emergency maintenance service. On August 5, 1992, there was a reported complaint of: "Handrail not working."

This problem with the handrail required defendant Millar to "replace an axle bearing and a 1400 belt to the handrail drive system." Another handrail problem was reported on August 14, 1992. In the experience of Paul J. Gibbs, it is foreseeable that "if the handrail belt slips, that handrail belt can slip pretty quickly," while the escalator is moving. A maintenance provider is faced with "a couple of ways of doing that [i.e., repairing bad bearings]. When you go in, you can replace everything in there and not just change one [bearing] that goes out. . . . Then you have a better time of running [between foreseeable repairs]." "If you don't repair the whole thing, then there's going to be more of a chance that it's going to break down sooner." The evidence in this case indicates that defendants "just fixed what was wrong . . . as opposed to going in and . . . replacing the entire bearing structure or fixing the entire escalator." Gibbs affirmed that "if there were passengers on these escalators when these escalators break down, that could pose a danger to these passengers." Accordingly, this record contains ample evidence from which a jury could reasonably infer that defendants deliberately and consciously elected a repair program to do the *least* that was necessary, with foresight of the likely risks posed to its passengers. In my view, a jury and not this Court should determine whether defendants' minimalist repair program constituted the use of all such reasonable precautions as human judgment and foresight are capable of. As my colleagues in the majority would nevertheless affirm the unwarranted grant of summary judgment, I respectfully dissent from Division 2 and the judgment.

DECIDED DECEMBER 4, 1996.

*Eric D. Miller*, for appellant.
*Lokey & Smith, G. Melton Mobley*, for appellees.