A96A1942. LANE v. MONTGOMERY ELEVATOR COMPANY.
(484 SE2d 249)

Judge Harold R. Banke.

Vernice L. Lane sued Montgomery Elevator Company ("Montgomery") to recover for injuries allegedly sustained in an elevator accident occurring at Macon Northside Hospital, formerly known as Charter Northside Hospital (the "Hospital"). Lane alleged that Montgomery negligently installed, operated, and maintained the elevator at issue. Lane appeals the summary judgment in favor of Montgomery.

To prevail at summary judgment, the moving party must show that no genuine issues of material fact remain to be tried and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant summary judgment as a matter of law. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the evidence was as follows. Lane, a licensed practical nurse, was sent to another floor to obtain some medical supplies. When she arrived at the ground floor, the elevator malfunctioned, stopping several inches above the designated floor. As Lane exited, she did not observe the drop-off and she fell forward injuring her back and leg.

Lane contended that the cause of the accident was Montgomery's failure to properly maintain and adjust the leveling vein of the elevator that malfunctioned. Lane testified that the subject elevator had failed to level properly on other occasions prior to the incident at issue here. Ralph Pate, a deputy state inspector from the Georgia Department of Labor, testified that a properly working elevator would not stop short of its intended floor and the failure to stop properly indicates a malfunction. The repair and maintenance records show some leveling problems with the Hospital elevators less than five months earlier.

It is undisputed that Montgomery installed the elevator at issue and provided certain maintenance and repair services under a contract between Montgomery and the Hospital. In moving for summary judgment, Montgomery primarily argued that Lane failed to offer any evidence of a negligent act or omission on its part which caused the elevator not to level at the time in question. Montgomery contended that a state inspection just prior to the incident showed no problem with the elevator at issue and a state inspection afterwards

was similarly favorable.

Montgomery's employee, elevator mechanic Fred Blume, testified that the elevator was shut down and removed from service almost immediately after Lane's fall until the completion of a state inspection by Pate, five days later. On that day, Blume and Pate jointly performed tests on the elevator and could not find any reason for the apparent malfunction. According to Pate's official report it was "not clear what caused occurrence." Pate approved the elevator's return to service. According to a Department of Labor semi-annual report completed two days prior to the incident, elevator #1 passed its inspection with no violations noted.[1] *Held*:

1. Montgomery claims that it was entitled to summary judgment as a matter of law and fact because pursuant to its contract with the Hospital, the Hospital had sole liability for the operation and use of the elevator equipment and because Lane failed to produce any evidence that it failed to exercise due care in its inspection and maintenance of the elevator. We disagree.

A building owner, here presumably the corporation owning the Hospital, "owes a duty of extraordinary diligence to elevator passengers and cannot delegate this duty to an independent contractor engaged to repair the elevator. [Cits.]" *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994); OCGA § 46-9-132; see *Hughes v. Hosp. Auth. of Floyd County*, 165 Ga. App. 530, 531 (2) (301 SE2d 695) (1983). Under OCGA § 51-2-5 (4), an employer is liable for the negligence of an independent contractor who is performing the employer's nondelegable statutory duty. *Perry v. Soil Remediation*, 221 Ga. App. 386, 388 (2) (471 SE2d 320) (1996). Nevertheless, Montgomery, regardless of its contractual obligations to the Hospital, had a duty not to act negligently toward Lane and other elevator users. See *Griffin v. AAA Auto Club South*, 221 Ga. App. 1, 4 (4) (470 SE2d 474) (1996); *Chapman v. Turnbull Elevator*, 116 Ga. App. 661 (158 SE2d 438) (1967); see *Jones v. Otis Elevator Co.*, 861 F2d 655, 665 (IV) (11th Cir. 1988); see 26 AmJur2d 283, Elevators & Escalators, § 20 (1996).

Georgia has not addressed the issue of whether Montgomery, in its capacity as the elevator maintenance contractor, is held to the same duty as the premises owner, that of extraordinary diligence. Other jurisdictions are divided on the issue. See, e.g., *Tait v. Armor*

---

[1] Montgomery's evidence is inconsistent as to whether the elevator involved in the accident was elevator #1 or elevator #3. For example, Blume, Montgomery's elevator mechanic, testified that although he denoted the malfunctioning elevator as elevator #3 on the repair ticket, it was really elevator #1. It is not clear whether he or others confused the numbering on other occasions. At Pate's deposition, Montgomery's counsel asked Pate to assume the elevator at issue was staff elevator #1.

*Elevator Co.*, 958 F2d 563, 567 (3rd Cir. 1992). However, even if Montgomery's duty to Lane is one of ordinary care, such a standard would be heightened due to the inherent risk of injury posed to those traveling on an elevator. See *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456 (475 SE2d 188) (1996). For these reasons, we reject Montgomery's contention that it was entitled to summary judgment as a matter of law.

Having addressed the legal issues, we next examine the parties' evidentiary burdens. State law requires that "[a]ny elevator . . . involved in an accident described in subsection (a) or (b) of this Code section shall be removed from service at the time of the accident. The equipment shall not be repaired, altered, or placed back in service until inspected by a certified inspector for the enforcement authority." OCGA § 8-2-106 (c). If it is proven that Montgomery violated OCGA § 8-2-106 (c), then such conduct would constitute a form of spoliation of evidence, because by working on the elevator, the evidence would have been tampered with, altered or destroyed. See *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539, 542 (469 SE2d 783) (1996) (destruction of electrical parts and other items removed after fire before opponent's opportunity to examine same necessitates remedial action); compare OCGA § 24-4-22. See, e.g., *Unigard Sec. Ins. Co. v. Lakewood Engineering &c. Corp.*, 982 F2d 363 (9th Cir. 1992) (rebuttable presumption created against party who destroyed boat and space heater may be insufficient to cure prejudice to other side); *Northern Assur. Co. v. Ware*, 145 FRD 281 (D. Me. 1993) (plaintiff's expert's destruction of physical evidence before its examination by opposing party precluded use of expert's testimony).

Spoliation or destruction of evidence creates the presumption that the evidence would have been harmful to the spoliator. *Greer v. Andrew*, 138 Ga. 663, 664 (3) (75 SE 1050) (1912); *Bennett v. Assoc. Food Stores*, 118 Ga. App. 711, 716 (2) (165 SE2d 581) (1968). Proof of such conduct would raise a rebuttable presumption against Montgomery that the evidence favored Lane, a fact rendering summary judgment inappropriate. *American Cas. Co. &c. v. Schafer*, 204 Ga. App. 906, 909 (3) (420 SE2d 820) (1992).

In this case, Montgomery's service records create material issues of fact as to whether Montgomery obeyed the law. One record shows that elevator #3 experienced a blown fuse in a control circuit several hours after the accident at issue.[2] If the elevator had been removed from service, it is not clear how it could have experienced a blown fuse. Further, the time inscribed on the service ticket for that service

---

[2] Despite the inconsistent numbering of the elevators, the misleveling elevator at issue here and the elevator repaired on the same day were both designated as elevator #3 in Montgomery's service records.

call is after the accident, creating the impression this elevator was not removed from service.

Another Montgomery service record dated October 12, three days after the accident and two days before the state inspection, shows that one of Montgomery's elevator mechanics performed routine maintenance on elevators #1 through #3, including the subject elevator. Such maintenance, by the mechanic's own admission, encompassed among other things, greasing, oiling, inspecting motor brushes, generator brushes, contacts on relays and fixing whatever needed repair. Although Blume testified that he did not touch the elevator until after the state inspection, the service record directly contradicts this testimony.

If Georgia law permitted repairs and maintenance to be performed prior to the time of the state inspection, plaintiffs would never be able to show what malfunctioned and caused their injuries. Thus, the fact that Tate, the state inspector, could not identify precisely what caused the misleveling can hardly be surprising in light of the evidence that Montgomery's employee subjected the elevator to maintenance procedures before the state inspection. Whether Montgomery tampered with the evidence must be resolved by a jury.

Also, we find it perplexing that the evidence Montgomery provided is inconsistent as to whether the elevator at issue is #1 or #3. The state inspection report which Montgomery offered from two days before the accident was for elevator #1. However, Montgomery's repair ticket denoted the elevator involved in the accident as elevator #3. Montgomery's repairman, Blume, claimed that despite the fact that the service ticket on which he had described the accident specified the elevator as being #3, it was really #1. According to Montgomery's service record, the state inspector conducted tests on elevator #1 not elevator #3, even though it was elevator #3 which Blume reported as malfunctioning and which was supposedly removed from service after Lane fell. Further, the service records fail to support Montgomery's assertion, as well as Blume's testimony, that Montgomery performed routine maintenance on the elevators approximately once every week. These records raise issues regarding whether Montgomery violated OCGA § 8-2-106 (c) and also whether the state actually inspected the elevator which malfunctioned. The conflict in the evidence is troublesome and cannot be deemed dispositive for summary judgment purposes, regardless of whether spoliation of the evidence occurred.

Notwithstanding the dissent's claim to the contrary, *Sparks v. MARTA*, 223 Ga. App. 768 (478 SE2d 923) (1996) does not demand a different result. In *Sparks*, no evidence was presented that the service company tampered with the escalator before the defense expert examined it. OCGA § 8-2-106 (c). Nor was there confusion about

which escalator malfunctioned or the applicable service records for the malfunctioning escalator. Here, Montgomery's service records showing the performance of some monthly routine maintenance do not prove that such maintenance was properly performed and that Montgomery complied with the applicable standard of care for elevator servicers.

Considering the inconsistent evidence presented by Montgomery as to whether the elevator at issue was elevator #1 or #3 and in light of the service records showing that the elevator may have been placed back in service, and may have been repaired and altered in violation of state law, we find that summary judgment was inappropriate. Because material issues of disputed fact remain unresolved, we reverse summary judgment. *Lau's Corp.*, 261 Ga. at 491.

2. Lane contends that the trial court erred by granting summary judgment without unsealing and by apparently failing to consider certain depositions. OCGA § 9-11-56 (c) requires a consideration of the entire record by the trial court. Where the record shows that a deposition was not considered below, it may be considered on appellate review to determine the existence of genuine issues of disputed material fact. *Taylor v. Schander*, 207 Ga. App. 627, 628 (2) (428 SE2d 806) (1993). The testimony of Blume, Lane, and Pate demonstrates the existence of material issues of disputed fact as determined in Division 1.

*Judgment reversed and case remanded. McMurray, P. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Andrews, C. J., Birdsong, P. J., and Beasley, J., dissent.*

ANDREWS, Chief Judge, dissenting.

In order to create an issue of fact for a jury, Lane must show that the elevator's malfunction was caused by a problem with the leveling mechanism *and* that Montgomery had actual or constructive notice of the problem and failed to properly repair or correct it. Lane has not come forward with any evidence showing the cause of the malfunction or any evidence showing even *slight* negligence on Montgomery's part. Therefore, I respectfully dissent.

First, Lane cannot show any reason for the malfunction. There was expert testimony that the problem *could have been* due to a faulty leveling vein or it could have been caused by a power outage.

Second, there is no evidence that Montgomery was on notice of a leveling problem with any of the elevators at the hospital. The agreement between Montgomery and the Hospital provided that Montgomery would "employ all reasonable care to see that the elevator equipment is maintained in proper operating condition," and there is no evidence that Montgomery breached this duty under the contract.

Two days before Lane's accident, the elevator passed its semi-

annual inspection by the State's inspector. On October 14, 1992, five days after the accident, Fred Blume, a Montgomery service repairman, met the State Inspector and they conducted a thorough examination of the elevator and could find nothing wrong. The elevator was returned to service with no repair or adjustment. There is an entry in the service record showing a leveling problem in May, some five months before the accident. Since the record also shows there were no further complaints received about the leveling malfunctions, this evidence supports Montgomery's representation that any malfunctions reported were immediately corrected.

There is also no issue created by the entry in the service record showing a call to Montgomery to replace a blown fuse on the same day as the accident. The uncontradicted testimony of Blume was that he ordered the elevator removed from service. If it was somehow reactivated after Blume left, whether by the hospital, one of its employees, or whomever, this issue has no bearing on any alleged negligence of Montgomery.

The majority opinion mentions a possible issue of fact due to spoliation of evidence. Black's Law Dictionary defines "spoliation" as "the destruction or the significant and meaningful alteration of a document or instrument." (Citation and punctuation omitted.) *Martin v. Reed*, 200 Ga. App. 775 (409 SE2d 874) (1991). The only support for this proposition is an entry in Montgomery's service call record which shows that the routine weekly maintenance, which Montgomery was obligated to provide, was performed on the elevators at the Hospital on October 12, 1992, after the accident and before the State Inspector's visit. But, there is no further evidence or testimony in the record to show the elevator was even moved or disturbed, much less that there was any "tampering or destruction" of evidence.

There are no issues of fact created by any confusion as to whether the elevator in question was #1 or #3. As outlined above and in the majority's opinion, Lane cannot show that Montgomery was on notice of a leveling problem with *any* of the elevators.

This Court has held that the owner or operator of an elevator or escalator is held to the higher duty of care chargeable to passenger carriers, and has impliedly held that the servicers of elevators are also charged with this higher standard of care. *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 458 (475 SE2d 188) (1996). But, this Court has never held that the owner or servicer was an insurer of the passengers' safety. Id.; *Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797, 798 (388 SE2d 920) (1989). In *James v. Otis Elevator Co.*, 854 F2d 429 (11th Cir. 1988), a case almost directly on point, the plaintiff fell down the elevator shaft and was injured when the door opened but the elevator had moved to another floor. The Eleventh Circuit held that because the plaintiff could not show that one of the

conditions which could have caused the malfunction was present at the time of the service company's last inspection, his theory of liability must necessarily fail. *James,* supra at 432.[3]

The majority's opinion also overlooks our holding in a recent case with similar facts. In *Sparks v. MARTA,* 223 Ga. App. 768 (478 SE2d 923) we stated that "[a]lthough the escalator was expected to malfunction, required repairs, and was sometimes dangerous, these facts do not show that MARTA or Millar was negligent in this case." Id. at 770. In *Sparks,* as in this case, plaintiffs could present no evidence that the defendant had not complied with routine maintenance procedures or had any prior knowledge that the escalator was malfunctioning. Therefore, we affirmed the trial court's granting of summary judgment to defendants. Id. at 770-771.

This Court has specifically rejected the doctrine of res ipsa loquitur in cases involving the malfunction of mechanical devices such as escalators and elevators. See *Millar,* supra at 457-458; *Ellis,* supra at 797-798. Accordingly, Montgomery is not required to *disprove* Lane's allegations. The standard for summary judgment requires only that Montgomery point to an absence of evidence on one essential element of Lane's claim. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

Lane cannot point to any evidence of negligence by Montgomery. Lane's only argument on appeal is that because a malfunction occurred, Montgomery was negligent. This is not the law and the trial court did not err in granting Montgomery's motion for summary judgment.

I am authorized to state that Presiding Judge Birdsong and Judge Beasley join in this dissent.

DECIDED FEBRUARY 24, 1997 —
RECONSIDERATION DENIED MARCH 18, 1997 — 

*Dozier, Lee, Graham & Sikes, Neal B. Graham,* for appellant.
*Buzzell & Pinkston, R. William Buzzell II, Loretta L. Pinkston, Paige J. Lee, Lokey & Smith, Sue K. Nichols, Jon W. Burton,* for appellee.

---

[3] Although federal decisions are not binding on this Court, we consider their reasoning persuasive, and in the absence of pertinent Georgia authority we are free to follow it. *State v. David,* 130 Ga. App. 872, 873 (204 SE2d 773) (1974).