IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00089-CV

 

Kenneth W. and June Flournoy,

                                                                                Appellants

 v.

 

Patricia Wilz, Guardian of Jon Patrick 

Flournoy an Incapacitated Person,

                                                                                Appellee

 

 

 



From the 77th District Court

Limestone County, Texas

Trial Court No. 26,300-A

 



Opinion



 








          This case involves a suit by Patricia
Wilz on behalf of her incompetent son, Jon Patrick Flournoy, against Kenneth
and June Flournoy.  A jury found for Patricia and the trial court imposed a
constructive trust on the entirety of the Flournoys’ farm.  In their sole
issue, the Flournoys contend that no evidence exists to support the judgment. 
We affirm in part and reverse and render in part.  

   




Background

 

          Kenneth and Patricia divorced in 1973,
and Kenneth received custody of their son Jon.  

Kenneth married June the next year.  Several
years later, Jon suffered incapacitating brain 

injuries in an automobile accident.

Kenneth, individually and as next friend of Jon,
sued Ford Motor Company in federal court.  In 1991, the parties entered a settlement
agreement, whereby Kenneth received $379,300 on Jon’s behalf and $95,000 individually. 
Kenneth was named guardian of Jon’s person and estate. 

During his term as Jon’s guardian, Kenneth purchased
Brookshire Grocery Stock and $330,000 in GNMA bonds for Jon’s benefit.  In
1991, the Flournoys purchased a farm for $153,049, paying $49,365.50 from Kenneth’s
individual settlement and executing a note for the remaining $103,049.  The
note required monthly payments of $961.  Kenneth later sold 500 Brookshire
shares, after which a deposit, labeled “stock,” appeared in the Flournoys’
account.  Between 1991 and 1999, the Flournoys withdrew several thousand
dollars from Jon’s account.  By 2001, Jon’s settlement funds were virtually depleted
and he became a ward of the State.  

Patricia sought and received appointment as
Jon’s permanent guardian.  She then sued the Flournoys for conversion, breach
of fiduciary duty and constructive fraud.  Alleging that the Flournoys purchased
the farm with Jon’s funds, Patricia also sought the imposition of a constructive
trust.  

At trial, Patricia introduced several checks
drawn on Jon’s account in the amount of either $960 or $961, which were either cashed
or deposited into the Flournoys’ personal account.  Patricia questioned the
Flournoys regarding these checks and others, altered checks, missing funds, usage
of Jon’s funds, the source of funds for the farm purchase, the stock and the
GNMA bonds.  In response, the Flournoys repeatedly asserted the Fifth Amendment. 


At the close of evidence, the Flournoys moved
for an instructed verdict, arguing that no evidence supported the imposition of
a constructive trust.  The trial court denied their motion.  Because it did not
inquire as to the amount of Jon’s funds used to acquire the farm, the Flournoys
also objected to Question 5 of the Jury Charge.  The trial court overruled the
objection.

The jury found as follows: (1) Kenneth breached
his fiduciary duty to Jon and committed constructive fraud; and (2) the Flournoys
converted Jon’s property, used Jon’s funds to acquire the farm and acted with
malice.  The trial court denied the Flournoys’ motion for judgment
notwithstanding the verdict and imposed a constructive trust on the entire
Flournoy farm.    

STANDARD OF REVIEW

 

A no evidence point requires consideration of “whether
the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review.”  City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005).  We “must credit favorable evidence if reasonable jurors
could, and disregard contrary evidence unless reasonable jurors could not.”  Id.   

ISSUES PRESENTED

          The Flournoys’ sole issue includes
three sub-issues.  First, they claim that Patricia failed to meet her tracing
burden.  Second, they allege that, because Patricia failed to meet her tracing
burden, adverse inferences improperly served as the sole basis for the
judgment.  Finally, they state that no evidence supports the imposition of a
constructive trust on the entire farm.      

Tracing

A party seeking
imposition of a constructive trust must strictly prove: (1) breach of a special
trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the
wrongdoer; and (3) tracing to an identifiable res.  Hubbard v. Shankle,
138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet denied).  Element three
requires that funds be traced “into the specific property sought to be
recovered.”  Graham v. Turner, 472 S.W.2d 831, 840 (Tex. Civ. App.—Waco
1971, no writ); see Marineau v. Gen. Am.
Life Ins. Co., 898 S.W.2d 397, 400 (Tex. App.—Fort Worth 1995, writ
denied). 

Once a party traces funds or shows that funds
have been commingled, the “constructive trustee” must prove what “part of the
fund used to purchase the properties was his money only;” otherwise, the “whole
fund” may be subjected to a constructive trust.  Graham, 472 S.W.2d at
840; see Logan v. Logan, 156 S.W.2d 507, 510 (Tex. 1941); see also Marineau,
898 S.W.2d at 400.  The “wrong-doer” bears the burden of proving that
his funds paid for the property “in whole or in part.”  Maryland Cas.
Co. v. Schroeder, 446 S.W.2d 117, 121 (Tex. Civ. App.—El Paso 1969, writ
ref’d n.r.e.).   

Here, the Flournoys contend that Patricia presented
no evidence tracing funds from Jon’s account to the Flournoys’ monthly payments
on the farm.  They argue instead that Patricia merely showed commingling.  We
disagree.  

According to the evidence, the Flournoys executed
a note for $103,049 to purchase the farm.  The note required monthly payments
of $961.  Of the documentary evidence presented, certain deposit slips and
checks reflected that the Flournoys either cashed or deposited several checks, drawn
on Jon’s account, in the monthly mortgage amount.  While none of these
documents specifically referenced the lien holders or the mortgage, they
constituted circumstantial evidence of the Flournoys’ improper usage of Jon’s
funds to pay for the farm.  It is simply not coincidental that the amounts of these
checks so closely mirrored the monthly mortgage payments.  

Additionally, other documentary evidence in the
form of altered checks, deposits, checks drawn on Jon’s account, and funds missing
from Jon’s account all reflect that several thousand dollars were taken from
Jon’s account over a period of several years.  Therefore, Patricia’s
documentary evidence performed two functions: (1) it showed a history of
misuse; and (2) it created a direct trail of funds taken from Jon’s account for
the purpose of paying the farm mortgage.  In light of this evidence, we hold that
Patricia presented evidence which “would enable reasonable and fair-minded
people” to trace funds from Jon’s account to the mortgage payment.  Wilson, 168 S.W.3d 802 at 827.               

Adverse Inferences

          A state cannot obtain a
judgment against a civil litigant “solely because that party refuses to testify
on the basis of the privilege against self-incrimination.”  In re Verbois,
10 S.W.3d 825, 829 (Tex. App.—Waco 2000, orig. proceeding).  Nevertheless, in
civil cases, a jury may draw adverse inferences against parties who
“refuse to testify in response to probative evidence offered against them: the
Amendment ‘does not preclude the inference where the privilege is claimed by a party
to a civil cause.’”  Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L.Ed. 2d 810 (1976)(emphasis original); see In re
Edge Capital Group, Inc., 161 S.W.3d 764, 767 (Tex. App.—Beaumont 2005, no
pet); see also Tex. R. Evid.
513(c).  A party’s refusal to testify constitutes “relevant evidence” from
which a jury “may draw whatever inference is reasonable under the
circumstances.”   Lozano v. Lozano, 983 S.W.2d 787, 791 (Tex.
App.—Houston [14th Dist.] 1998), rev'd on other
grounds, 52 S.W.3d 141
(Tex.2001).  Therefore, where “proper circumstances”
exist, “silence in the face of accusation is a relevant fact not barred from
evidence.”  Baxter, 425 U.S. at 319, 96 S. Ct. at 1558.

          We equate this rule of law to the
spoliation presumption that destroyed evidence would have been “unfavorable to
the spoliating party.”  Trevino v. Ortega, 969 S.W.2d 950, 960 (Tex. 1998) (Baker, J., concurring); see Lane v. Montgomery Elevator Co., 225 Ga. App. 523, 525, 484 S.E.2d 249, 251 (1997); see also Wal-Mart Stores, Inc. v.
Johnson, 106 S.W.3d 718, 721-722 (Tex. 2003).  While the nonspoliating
party must still prove its case, the presumption constitutes a factor when “weighing
the evidence.”  Trevino, 969 S.W.2d at 961.  Thus, the presumption’s
“probative value” supports the nonspoliating party’s assertions, enabling him
to “survive summary judgment, directed verdict, judgment notwithstanding the
verdict and factual and legal sufficiency review on appeal.”  Id at
960-961.  Like the spoliation presumption, where a party refuses to testify and
pleads the Fifth Amendment, it is reasonable to presume that the evidence
sought to be shielded would be damaging if revealed.      

          The trial court instructed the jury,
without objection, that “the Fifth Amendment does not forbid adverse inferences
against Kenneth Flournoy and/or June Flournoy when either of them refused to
testify in response to probative evidence offered against them.”  The Flournoys do not argue that the law prohibits
adverse inferences, but that Patricia failed to meet her tracing burden.  Thus,
they contend that adverse inferences derived from their assertions of the Fifth
Amendment served as the sole basis for the judgment.  We disagree.  

The Flournoys rely on Verbois for the
proposition that adverse inferences cannot serve as the sole basis for
obtaining an adverse judgment.  However, Verbois is distinguishable from
the Flournoys’ case, because it involved the State’s use of a civil
litigant’s refusal to testify as the sole basis for obtaining an adverse
judgment.  See In re Verbois, 10 S.W.3d at 829.  The present case
involves no governmental entity seeking an adverse judgment against the
Flournoys.  Neither does this case involve a situation where the Flournoys’
testimony alone served as the basis for the judgment. 

Rather, as civil litigants, the Flournoys’
assertions of the Fifth Amendment and refusals to testify gave rise to the
adverse inference, or presumption, that they sought to conceal unfavorable
evidence.  While the State cannot use a party’s Fifth Amendment assertions to
obtain an adverse judgment, Texas law allows juries to derive adverse
inferences against civil litigants who refuse to testify when confronted with probative
evidence.  Here, the jury could reasonably conclude that the Flournoys refused
to respond to questions regarding the source of mortgage payments because they
did, in fact, use Jon’s funds to make those payments.  

Adverse inferences drawn from the Flournoys’
refusals to testify neither relieved Patricia of her tracing burden, nor
amounted to speculation and conjecture, but rather served as additional
evidence that built on Patricia’s documentary evidence.  Under these
circumstances, the jury could reasonably conclude that: (1) the Flournoys
refused to testify because the answers would have been damaging to them; and
(2) as indicated by checks written on Jon’s account in the amount of the
monthly note payments, the Flournoys used Jon’s money to pay for the farm.  

Thus, we
hold that the adverse inferences
derived from the Flournoys’ testimony did not serve as the sole basis for the
judgment, but when coupled with Patricia’s documentary evidence, “would enable reasonable and fair-minded people”
to trace funds from Jon’s account to the mortgage payments.  Wilson, 168
S.W.3d 802 at 827.               

Imposition of the
Constructive Trust

 

Where a “fiduciary or confidential
relationship” exists between two parties and the “party holding property or money would profit by a wrong or be
unjustly enriched if he were allowed to keep the property or money,” imposition of a constructive
trust is justified.  Oak Cliff Bank & Trust Co. v. Steenbergen, 497
S.W.2d 489, 492 (Tex. Civ. App.—Waco 1973, writ ref’d n.r.e.).  Because a
constructive trust constitutes an
equitable remedy, it lies within the trial court’s discretion.  See Stephens
v. Stephens, 877 S.W.2d 801, 804 (Tex. App.—Waco 1994, writ denied).  Therefore,
we review the trial court’s decision under an abuse-of-discretion standard. 

Here, the trial court imposed a constructive
trust on the entire Flournoy farm.  The Flournoys argue that the entire farm
was not subject to a constructive trust.  We have already found that Patricia adequately
traced Jon’s funds to the Flournoys’ mortgage payments.  Even assuming that
Patricia merely proved commingling, the burden still shifted to the Flournoys
to distinguish which portion of their personal funds contributed to purchasing
the farm.  

The evidence reflects that the Flournoys purchased
the farm for $153,049.  Payment for the farm came from two sources.  First,
Kenneth paid a $49,365.50 down payment.  Second, the Flournoys executed a note
for the remaining $103,049, payable in monthly installments of $961.  According
to the Flournoys, they owe approximately $50,000 on the note.  In light of the
checks drawn on Jon’s account in the monthly mortgage amount, the history of
misuse of Jon’s funds, and the Flournoys’ refusals to testify when questioned
about the source of mortgage payments, Patricia proved that the Flournoys used
Jon’s funds to make at least some of those payments.    

  Once Patricia traced Jon’s funds to the mortgage
payments, the Flournoys bore the burden of distinguishing which funds came from
their own account.   In his deposition, Kenneth testified that he paid the down
payment out of his individual settlement funds.  While the evidence reflects
that the Flournoys used Jon’s funds to make mortgage payments, it also clearly
indicates that the down payment came from Kenneth’s individual funds.  Because
the Flournoys proved that at least a portion of the purchase price was paid out
of Kenneth’s personal funds, the court abused its discretion by imposing a
constructive trust on the entire Flournoy farm.  

Nevertheless, Patricia is still entitled to a
constructive trust on part of the farm.  Subtracting the amount owed of
$50,000 and the down payment of $49,365.50 from the purchase price of $153,049,
the most amount that could have been paid with Jon’s funds totals $53,683.50.  Therefore,
we hold that Patricia is entitled to a constructive trust on an undivided 35%
interest in 

the farm.  

Accordingly, we sustain the Flournoys’ sole
issue in part.  




CONCLUSION

          Because the court abused its
discretion by imposing a constructive trust on the entirety of the Flournoys’
farm, we reverse that portion the judgment imposing a constructive trust and
render judgment imposing a constructive trust on an undivided 35% interest in
the farm.  The trial court’s judgment is affirmed in all other respects.     

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring and dissenting)

Affirmed in part;
Reversed and rendered in part

Opinion delivered and
filed July 19, 2006

[CV06]

                                                                                     






 advance of trial of intent to
introduce in the State's case in chief such evidence other than that arising in the same
transaction.




      Extraneous offense evidence that logically serves any of the "other" purposes is "relevant"
beyond its tendency to "prove the character of a person to show that he acted in conformity
therewith."


 It is therefore admissible, subject only to the trial court's discretion to exclude it
under Rule 403.


 On the other hand, if extraneous offense evidence is not "relevant" apart from
supporting an inference of "character conformity," it is absolutely inadmissible under Rule
404(b).



      When a party attempts to adduce evidence of "other crimes, wrongs, or acts" the opponent
of that evidence, in order to preserve a complaint for appeal, must object in a timely fashion.


 
Once that complaint is lodged, it is incumbent upon the proponent of the evidence to satisfy the
trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove
-the character of a person in order to show that he acted in conformity therewith."


 The trial
court should honor any request by the opponent of the evidence for articulation into the record of
the purpose for which evidence is ultimately admitted by the trial court.


 Because Bright never
requested the court to articulate the "other purpose" for which the evidence was admitted, we
overrule points of error two and four.
      If the proponent persuades the trial court that evidence of "other crimes, wrongs, or acts" has
relevance apart from character conformity, such as to rebut a defensive theory, the evidence
should be admitted.


 The trial judge must conclude that the evidence tends in logic and common
experience to serve some purpose other than character conformity to make the existence of a fact
of consequence more or less probable than it would be without the evidence.


 In reviewing the
trial court's decision whether to admit evidence under Rule 404(b), appellate courts uphold the
trial court's ruling on appeal absent an "abuse of discretion."



        In this case, the defense raised the issue of why the victim—after having recanted her
original charges against Bright several months prior to trial—testified in support of the charges. 
The evidence in question was highly relevant to that issue because it included threats made by
Bright as to what would happen to her family if the victim were to tell anybody what happened,
as well as evidence showing that he was capable of carrying out those threats.


 We hold that such
evidence, which would explain the basis of the victim's fear of telling the truth, was relevant and,
therefore, properly admitted. 
      Although Bright argues on appeal that the relevance of his prior sexual misconduct and the
relevance of his prior violent conduct should be evaluated independently and subjected to different
analyses, his objection at trial to the evidence of prior sexual misconduct merely incorporated by
reference his previous objection to the evidence of prior violent conduct without distinguishing the
two types of extraneous conduct. Furthermore, the evidence of Bright's violent conduct was tied
together with the evidence of his sexual misconduct by the victim's own testimony that when
Bright raped her he threatened to kill her whole family if she told anybody. As a result, the
evidence of both types of "other crimes, wrongs, or acts," are treated together on appeal. We
overrule points of error one and three.
      In points five, six, and seven, Bright contends that the admission of extraneous "crimes,
wrongs, or acts" violated his right of confrontation under the sixth amendment of the United States
Constitution, article I, section 10, of the Texas Constitution, and articles 1.05, 1.15, and 1.25 of
the Texas Code of Criminal Procedure. Because Bright did not present this complaint to the trial
court at the time he made his objection to the relevance of the evidence of extraneous "crimes,
wrongs, or, acts," nothing is preserved for review.


 Therefore, we overrule points of error five
through seven.
 
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
          (Chief Justice Thomas not participating) 
Affirmed
Opinion delivered and filed January 6, 1993
Do not publish