## A07A1115. BRADY et al. v. ELEVATOR SPECIALISTS, INC. et al.

(653 SE2d 59)

JOHNSON, Presiding Judge.

John Brady was injured when he fell backward in his wheelchair while exiting an elevator in a building owned by Atlanta Center Limited ("ACL"). Elevator Specialists, Inc. ("ESI") was responsible for servicing and maintaining the elevators in the building. John Brady and Patricia Brady filed a personal injury and loss of consortium action against ACL and ESI, among others. The trial court granted ACL's and ESI's motions for summary judgment. The Bradys appeal, and we affirm for the reasons set forth below.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a grant of summary judgment de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.[2] A defendant seeking summary judgment, "need only show an absence of evidence to support an essential element" of the plaintiff's case to prevail.[3]

So viewed, the evidence shows the following. On January 14, 2002, plaintiff John Brady, a wheelchair-bound paraplegic, boarded a high-rise elevator in the 250 Piedmont Avenue Building in Atlanta. The elevator mis-leveled when it stopped at the 12th floor, with the bottom of the elevator cab resting approximately eight inches above the landing level. Because the elevator was crowded, Brady had to back out of the elevator and was physically unable to look in the direction he was traveling. The wheelchair fell backwards out of the elevator and Brady's head hit the floor, injuring him.

ESI's records showed that the elevator on which Mr. Brady was injured, known as elevator six, failed to level properly in April 1998. In November 2000, elevator six stopped between floors, so that a passenger could not exit. There was also evidence of leveling problems with the five high-rise and four low-rise elevators in the building not specifically attributed to elevator number six. The Bradys point to evidence that ESI was aware of five to seven elevator mis-leveling incidents on the premises during a two-and-a-half to three-year period before Mr. Brady was injured. Evidence also shows that before Mr. Brady was injured ACL was notified of two to three mis-leveling incidents over a three-year period, and employees of the building tenant, SunTrust Bank, knew of at least 23 mis-leveling incidents over an indeterminate period of time. Twelve of these incidents were

---

[1] OCGA § 9-11-56 (c).

[2] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

[3] *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

witnessed by one SunTrust employee who did not report the mis-leveling to anyone in the building, although she testified that a co-worker reported one incident to security. Another SunTrust employee saw "[a] couple" of mis-leveling incidents before Mr. Brady's injury, but did not notify the building authorities. SunTrust's facility manager testified that he was aware of nine to twelve occasions over a four-year period in which a building elevator was reported to have mis-leveled.

ESI's elevator maintenance schedule required that elevator six's landing systems, door operators, and small motors be examined four times a year, its hatch doors and locks twice per year, and its wiring and connections once per year. ESI also performed preventive maintenance every week, which included riding the car and listening for unusual noises. ESI's maintenance procedures were derived from the elevator manufacturer's maintenance guidelines, and there is no evidence that its maintenance procedures, as formulated or as carried out, were not in conformity with these guidelines.

ESI mechanics performed preventive maintenance on elevator number six on January 13, 2002, the day before Mr. Brady's injury. ESI also maintained elevator six on January 14, 2002, before Mr. Brady was injured. The mechanics rode the elevator and checked various components, and they found no problems. After the mis-leveling incident, ESI removed elevator six from service pending inspection by the City of Atlanta. An ESI mechanic checked the elevator, but was unable to determine a specific cause for the mis-leveling. The City of Atlanta inspector was also unable to determine a cause for the mis-leveling, and the elevator was placed back in service.

According to the Bradys' expert, Robert F. Dieter, it was understood in the elevator industry that older elevators require more frequent inspections in order to minimize malfunctions. According to Dieter, because elevator six was 27 years old, had previous mis-leveling problems, and other elevators in the building had also mis-leveled, ESI failed to comply with industry standards when it failed to make more frequent and comprehensive inspections of elevator six than were provided in ESI's maintenance schedule.

1. ACL and ESI maintain that the trial court abused its discretion in denying their motions to exclude Dieter's opinion testimony.[4] In particular, they contend that Dieter is not qualified to render expert opinion testimony regarding elevator maintenance, and that

---

[4] See *Moran v. Kia Motors America*, 276 Ga. App. 96, 97 (1) (622 SE2d 439) (2005) (trial court's determination of whether a witness is qualified to render an opinion as an expert will not be disturbed absent a manifest abuse of discretion).

his opinion testimony as to standards in the elevator industry and causation are not reliable for purposes of OCGA § 24-9-67.1 (b) and under principles set forth in *Daubert v. Merrell Dow Pharmaceuticals.*[5]

Neither ACL nor ESI filed a cross-appeal from the trial court's ruling on their motions to exclude Dieter's testimony, and as a general rule a cross-appeal is required for an appellee to preserve an enumeration of error concerning an adverse ruling.[6] "However, a ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal.'"[7] Dieter's opinion that ESI failed to comply with the industry standard of care in maintaining the elevators at the 250 Piedmont Avenue Building is material to a determination of whether the trial court's grant of summary judgment to ACL and ESI was correct, and so we will consider the trial court's ruling refusing to exclude Dieter's testimony.[8]

The trial court was authorized to accept Dieter as an expert in elevator maintenance. "It is the possession of special knowledge derived either from experience, study, or both in a field of expertise that makes one an 'expert.' "[9] Dieter worked 31 years for Dover Elevator Company, where his responsibilities included maintenance, repair, and up-grading of existing elevators for customers. Among other things, he was certified as an elevator inspector in the State of Florida and was also certified as a qualified elevator inspector by the American Society of Mechanical Engineers. In light of Dieter's level of knowledge and experience in the area of elevator maintenance, the trial court did not abuse its discretion in accepting him as an expert.[10]

The trial court also did not abuse its discretion in refusing to exclude Dieter's opinion testimony that ESI did not follow industry standards in maintaining elevator six. Although ACL and ESI contend Dieter's opinion as to the standard in the industry could not be tested and was not shown to be stated in any publication, in some

---

[5] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993). See OCGA § 24-9-67.1 (f) (in applying OCGA § 24-9-67.1, Georgia courts may draw from the opinions of the United States Supreme Court in *Daubert*; *Gen. Elec. Co. v. Joiner*, 522 U. S. 136 (118 SC 512, 139 LE2d 508) (1997); and *Kumho Tire Co. v. Carmichael*, 526 U. S. 137 (119 SC 1167, 143 LE2d 238) (1999)).

[6] *Ga. Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987).

[7] Id.

[8] See *Electrical Distrib., Inc. v. Turner Constr. Co.*, 196 Ga. App. 359, 361 (2) (395 SE2d 879) (1990) (appellee's defense was material to whether grant of summary judgment was correct, and could be considered without necessity of cross-appeal).

[9] (Citation and punctuation omitted.) *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 580 (1) (521 SE2d 600) (1999).

[10] See *Cotten v. Phillips*, 280 Ga. App. 280, 286 (633 SE2d 655) (2006) (*Daubert*'s role of ensuring that the courtroom door remains closed to junk science is not served by excluding testimony supported by extensive relevant experience.).

cases, "the relevant reliability concerns may focus upon personal knowledge or experience."[11] Dieter based his opinion on his personal knowledge of the elevator industry, his review of the elevator maintenance records, and the deposition testimony of ESI mechanics, and we cannot conclude that the trial court abused its discretion in finding an opinion based on these factors to be sufficiently reliable to be admissible.

> Provided an expert witness is properly qualified in the field in which he offers testimony, and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion ... goes to the weight and credibility of the testimony, not its admissibility.[12]

We agree with ACL and ESI, however, that the trial court abused its discretion in failing to exclude Dieter's opinion that if ESI had followed a more aggressive maintenance schedule for elevator six that the condition in the elevator that led to its mis-leveling would almost certainly have been discovered or prevented before Mr. Brady was injured. In his deposition testimony, Dieter admitted that he did not know what caused elevator six to mis-level. He also admitted that he did not know if any of the elevator's components had been replaced and that he did not know of any studies or literature that detailed the efficacy of maintenance programs over time. Dieter showed no basis for his opinion that there was a causal link between the mis-leveling of the elevator on January 14, 2002, and ESI's alleged failure to comply with industry standards by undertaking a more aggressive maintenance program. " '[K]nowledge' connotes more than subjective belief or unsupported speculation."[13]

2. We now consider whether the trial court erred in granting ESI's and ACL's motion for summary judgment. ACL, as the building owner, "owes a duty of extraordinary diligence to elevator passengers and cannot delegate this duty to an independent contractor engaged to repair the elevator."[14] Although the Georgia courts have not specifically held elevator maintenance providers such as ESI to the same level of extraordinary diligence as the building owner, ESI's duty to elevator passengers, regardless of its contractual obligations, is at least a heightened standard of ordinary care due to the risk of

---

[11] *Kumho Tire Co.*, 526 U. S. at 150 (II) (B).

[12] (Footnote omitted.) *Woodland Partners Ltd. Partnership v. Dept. of Transp.*, 286 Ga. App. 546, 548 (1) (b) (650 SE2d 277) (2007) (citing, among other things, OCGA § 24-9-67.1 (b)).

[13] *Daubert*, 509 U. S. at 590.

[14] (Citations and punctuation omitted.) *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 524 (1) (484 SE2d 249) (1997).

injury.[15] Neither building owners nor elevator maintenance providers, however, are insurers of elevator passengers' safety.[16]

The Bradys contend that ESI's actual notice and ACL's actual or constructive notice of previous mis-leveling incidents involving elevator six demonstrated their superior knowledge of the defective and dangerous condition of the elevator. "Proof of the occurrence of a fall, even an elevator-related one, does not establish liability. The true ground of liability is a defendant's superior knowledge of the defective condition."[17]

We have been unwilling to find that either a premises owner or maintenance provider had superior knowledge of the malfunctioning of an escalator where "[t]he record shows that the defendants had a program of inspection for and repair of any problems with the escalator and that the escalator had been inspected the day of the incident."[18] In this case, ESI had in place an extensive program of elevator inspection and repair, and elevator six had been inspected the day before and the day of Mr. Brady's injury, and it was found to be operating properly. Although elevator six was shown to have not properly leveled twice before within an approximately four-year period, because ESI's inspection program required weekly inspections, along with annual, semi-annual, and quarterly maintenance, elevator six had also been inspected or maintained hundreds of times during this period, and the Bradys do not show that the inspections or maintenance actually performed were negligent or that ESI or ACL knew or were put on notice during these procedures that elevator six was defective. Thus, there is no basis for a jury to find that either ACL or ESI knew, or had reason to know, that elevator six was defective or presented a danger to passengers on January 14, 2002.[19]

The Bradys also point to evidence showing that other elevators in the building had mis-leveled. Many of these incidents were never reported to anyone, other incidents were not specific as to whether they occurred on the building's high-rise elevators, such as elevator six, or the low-rise elevators, the incidents occurred over a period of

---

[15] See *Lane*, 225 Ga. App. at 525 (1); *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 458 (2) (475 SE2d 188) (1996).

[16] See generally *Sparks v. MARTA*, 223 Ga. App. 768 (1) (478 SE2d 923) (1996).

[17] (Citations omitted.) *Peterson Properties Corp. v. Finch*, 235 Ga. App. 86, 87 (1) (508 SE2d 463) (1998). To the extent the Bradys also assert a claim based on the duty to warn, this duty is also based on a defendant's superior knowledge of the defect. See, e.g., *Baldwin County Hosp. Auth. v. Martinez*, 204 Ga. App. 840, 843 (420 SE2d 760) (1992).

[18] *Rouse v. MARTA*, 278 Ga. App. 767 (629 SE2d 500) (2006).

[19] See *Sparks*, supra, 223 Ga. App. at 769-770 (2) (elevator maintenance provider performed bi-monthly inspections of escalator, and there was no evidence that defect that caused escalator to fail was discoverable upon any type of inspection).

years, and no reasons for the mis-leveling were demonstrated. Evidence that ACL and ESI knew or should have known that over a multi-year period other elevators in the building had mis-leveled is not sufficient to create an issue of fact as to ACL's or ESI's superior knowledge of a defect in elevator six.[20]

The Bradys further contend that there remains an issue of material fact as to ESI's negligence, and that ACL is vicariously liable for any breach of duty by ESI.[21] Dieter opined that ESI's maintenance program did not conform to industry standards because it failed to take into account that older elevators such as elevator six required a higher level of maintenance. But other than expressing his opinion that more frequent maintenance needed to be done, Dieter did not point to anything deficient or negligent in the maintenance that ESI did perform, nor could he identify what caused elevator six to mis-level on the day that Mr. Brady was injured. It is a matter of speculation whether ESI's alleged failure to perform additional maintenance in light of the age of elevator six had any connection to the elevator's mis-leveling on January 14, 2002. Mechanical devices such as elevators "get out of working order, and sometimes become dangerous and cause injury without negligence on the part of anyone."[22] Without competent evidence that ESI's alleged negligence caused Mr. Brady's injury, there is no material issue of fact for the jury.[23]

*Lane v. Montgomery Elevator Co.*,[24] and *Millar Elevator Svc. Co. v. O'Shields*,[25] relied on by the Bradys, do not require a different result. Summary judgment to the defendant elevator company in *Lane* was largely precluded by spoilation of the evidence, and the Bradys do not raise a spoilation claim here.[26] In *Millar*, the post-accident investigation showed a defect in the escalator which caused it to stop suddenly, leading to the plaintiff's fall.[27] The evidence in *Millar* also showed that a visual inspection of certain escalator

---

[20] See, e.g., *Peterson Properties*, 235 Ga. App. at 87 (1) (affidavit of an office worker that she " 'tripped because the elevator was misaligned,' " did not show that the worker notified the defendant "or even whether the fall involved the same elevator").

[21] See *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994) (landlord is vicariously liable for contractor's negligence where the duty is to maintain an elevator in a safe operating condition).

[22] (Citation and punctuation omitted.) *Millar*, 222 Ga. App. at 457-458 (2).

[23] See *Denson Heating & Air Conditioning Co. v. Oglesby*, 266 Ga. App. 147, 148 (596 SE2d 685) (2004) (where expert could only speculate as to the cause of the furnace explosion, plaintiffs could not establish that any negligence by the defendant in installing or servicing of the furnace caused the explosion).

[24] Supra.

[25] Supra.

[26] *Lane*, 225 Ga. App. at 526-527 (1).

[27] *Millar*, 222 Ga. App. at 456.

components could have indicated its imminent failure.[28] In this case, no specific defect in elevator six was ever linked to its mis-leveling, and so the evidence does not show that the defect, if any, was discoverable upon more frequent inspection.

In light of the foregoing, the trial court did not err in granting summary judgment to ACL and ESI.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 20, 2007.

*Glaser, Currie & Bullman, David S. Currie*, for appellants.

*Carlock, Copeland, Semler & Stair, Frederick M. Valz III, Ambadas B. Joshi, Swift, Currie, McGhee & Hiers, William J. Martin, Stephen L. Cotter*, for appellees.