**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0993. HILL v. COLE CC KENNESAW GA, LLC et al.

PHIPPS, Presiding Judge.

Shakira Hill filed a complaint against Cole CC Kennesaw GA, LLC ("Cole CC"), Corporate Facilities Group, Inc. ("CFG"), and Kone, Inc., to recover for injuries she allegedly sustained when she tripped and fell while entering an elevator that had not stopped level with the floor. Cole CC owned the building where the incident occurred, CFG managed the premises, and Kone serviced and maintained the elevators. Hill alleged that the defendants were negligent because they had failed to properly maintain the elevators. Cole CC, CFG, and Kone moved for summary judgment, which motions the trial court granted in two separate orders.

In a prior appeal, *Hill v. Kone* ("*Hill I*"),[1] Hill challenged the grant of summary judgment to Kone.[2] This court reversed that judgment.[3] Here, Hill appeals the grant of summary judgment to Cole CC and CFG. For the reasons that follow, we reverse that grant of summary judgment as well.

> [O]n appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[4]

So viewed, the evidence showed that on November 4, 2009, an elevator technician employed by Kone was at the building in which Hill worked, performing preventive maintenance on elevators number one, three, and four, and a freight elevator.[5] The technician left the building at 5:00 p.m. after he purportedly completed the maintenance and the elevators were working properly. At about 10:00 that night,

---

[1] 329 Ga. App. 716 (766 SE2d 120) (2014).

[2] Id.

[3] Id.

[4] *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006) (citations omitted); see *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010).

[5] See *Hill I*, supra at 717.

2

Hill and a co-worker entered elevator number four. The elevator had stopped such that its floor was not level with the building's floor. Hill did not notice the misleveling, and tripped, striking her head on a metal railing inside the elevator. Hill's co-worker then pushed a button on the elevator, causing the elevator to descend to the lobby floor, where a security officer called 911. Hill was taken to a hospital for treatment.[6] After Hill's fall, another building occupant rode the same elevator to a different floor, then returned in the elevator to the lobby and reported that the elevator was not functioning properly.[7] The incident was then reported to the Georgia Department of Labor, which sent a representative to inspect the elevator with a Kone employee the next day.[8] There is evidence that they inspected only elevator number three - although Hill had fallen in elevator number four - and that elevator number four was not removed from service.[9] (No defects were found during the inspection of elevator number three.)[10]

---

[6] Id.

[7] Id.

[8] Id.

[9] Id.

[10] Id.

A. *Prior appeal*

In December 2013, the trial court granted Kone's motion for summary judgment, holding that Kone had no knowledge of the leveling problem before the incident occurred, that Kone had a regularly scheduled inspection and service program and had performed maintenance and inspection on the day of the incident, and that there was no evidence that the elevator had a defect on the date of the incident.

In reversing the trial court's judgment (in November 2014), this court in *Hill I* held that factual issues remained regarding whether Kone had complied with OCGA § 8-2-106, which requires property owners to take certain actions following elevator accidents involving personal injury or death.[11] OCGA § 8-2-106 provides, in relevant part:

> (a) The owner or lessee shall report, by telephone, to the enforcement authority on the same day or by noon on the next work day, . . . all elevator . . . related accidents involving personal injury or death. The owner or lessee shall also provide a written report of this accident within seven days. . . . (c) Any elevator . . . involved in an accident described in subsection (a) . . . of this Code section shall be removed from service at the time of the accident. The equipment shall not be repaired, altered,

---

[11] Id. at 718-719.

4

or placed back in service until inspected by a certified inspector for the enforcement authority.

The *Hill I* court explained,

> failure to comply with th[at] statute, whether intentionally or by mistake, would constitute a form of spoliation of evidence, because by working on the elevator prior to inspection, the evidence would have been tampered with, altered, or destroyed. Spoliation creates the presumption that the evidence would have been harmful to the spoliator. Proof of such conduct would raise a rebuttable presumption against Kone that the evidence favored Hill, a fact rendering summary judgment inappropriate.[12]

The court reasoned:

> Here, there is evidence that the inspection authorities were notified [of the accident] and came to inspect the elevator, but there is some evidence that the post-incident inspection was done on the wrong elevator. Thus, there is a question of fact as to whether the correct elevator was taken out of service and whether the correct elevator was inspected immediately following the incident, as required by OCGA § 8-2-106. [T]he fact that the state inspector could not identify precisely what caused the misleveling can hardly be surprising in light of the evidence that the inspection was on the wrong elevator. Because the record contains a factual dispute as to compliance with OCGA §

---

[12] Id. at 718 (footnotes and punctuation omitted).

5

8-2-106, and in light of [] expert testimony as to Kone's failure to properly maintain the elevator at issue, summary judgment was not appropriate.[13]

B. *This Appeal*

In their motion for summary judgment,[14] Cole CC and CFG contended that there was no evidence that they had failed to make the premises safe, and that they could not be held vicariously liable for Kone's negligence because the trial court had granted summary judgment in Kone's favor.

In its order granting summary judgment to Cole CC and CFG,[15] the trial court found that they (Cole CC and CFG) had no knowledge or notice prior to the incident that the elevator had a defect; that Kone had a regularly scheduled inspection and service program to deal with any problems with the elevators; that Cole CC and CFG were aware that Kone was performing work on the elevators; that Cole CC and CFG had no notice of a defect on the day of the alleged incident; that there was no evidence that they had superior knowledge that the elevator was not working properly

---

[13] Id. at 719 (footnotes and punctuation omitted).

[14] The motion was filed in February 2014.

[15] The trial court entered its order granting summary judgment to Cole CC and CFG in June 2014.

or had malfunctioned prior to the alleged incident; and that because Kone had been granted summary judgment, Cole CC and CFG could not be held vicariously liable for Kone's alleged negligence.

Hill contends that the trial court erred by granting summary judgment to Cole CC and CFG because (1) there is evidence that they had actual and superior knowledge of the defect and failed to properly maintain the elevator; and (2) any lack of evidence showing the existence of a defect on the date of the accident is due to spoliation.

1. *Knowledge of defect and duty to maintain elevator*. Pertinent to Cole CC, "[t]he owner of an office building, equipped with an elevator which is operated for conveying his tenants and their employees and patrons to and from the various floors," has a duty to protect passengers in the elevator.[16]

> This duty requires him to exercise extraordinary diligence on behalf of himself and his agents to protect the lives and persons of his passengers. . . .This duty can not be waived or released even by an express contract. Being one in which the public has an interest, public policy forbids such a waiver or release. For the same reason that the duty cannot be avoided by contract with the passengers, this duty of extraordinary diligence

---

[16] *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994).

cannot be delegated to a third party. The owner's duty remains in place regardless of whether a third party acquires a duty by undertaking maintenance or repair. The owner is liable for slight negligence.[17]

As to CFG, "[a]n agent who undertakes the sole and complete control and management of the principal's premises is liable to third persons, to whom a duty is owing on the part of the owner, for injuries resulting from his negligence in failing to make or keep the premises in a safe condition."[18]

Cole CC and CFG concede that they "cannot avoid their duty [to protect the elevator passengers] by contracting with a third party, and they remain vicariously liable for any negligence by Kone." They also acknowledge that they "could be held liable on the basis of any slight negligence which proximately caused the injuries to [Hill], or on the basis of [their] vicarious liability for slight negligence on the part of Kone." Yet, at the same time, they assert that there is no evidence that they were negligent, stating that they, "through the contract with Kone[,] had an aggressive maintenance and repair program in place." This assertion is unconvincing because it

---

[17] Id.

[18] *Ramey v. Pritchett*, 90 Ga. App. 745, 751 (3) (84 SE2d 305) (1954) (citation omitted).

ignores the rule that the duty of extraordinary diligence to elevator passengers cannot be delegated to a third party.[19]

As found in *Hill I*,[20] there is evidence of Kone's negligence, including "expert testimony as to Kone's failure to properly maintain the elevator at issue."[21]

> Hill relied in part on an affidavit from her expert who averred that the Kone service technician who maintained the elevators did so in a manner inconsistent with the appropriate KONE maintenance manual. For example, the technician denied in a deposition that certain leveling characteristics should be checked during routine maintenance, which denial contradicted the procedure in the maintenance manual. The expert also noted problems with Kone's record keeping (including mislabeling which elevator had been serviced) and that all of the elevators in the building had experienced leveling issues in the past. The expert averred that Kone breached industry standards for proper maintenance and inspection and that "had the proper tests and inspection and maintenance of the elevators taken place, the components that were causing misleveling issues would have been identified, and Kone would have known to make the needed corrections to the equipment . . . before the malfunction" that injured Hill.[22]

---

[19] See *Gaffney*, supra.

[20] Supra.

[21] See *Hill I*, supra at 719.

[22] Id. at 717-718.

Notably, there was also evidence that a Kone technician had previously discussed the elevators' misleveling problems with a CFG employee. Thus, there was evidence of Cole CC's and CFG's negligence, precluding the grant of summary judgment.[23]

Contrary to the assertion of Cole CC and CFG, *Brady v. Elevator Specialists*[24] is not controlling here. In that case, the plaintiffs "[did] not show that the inspections or maintenance actually performed were negligent or that [the owner or elevator maintenance provider] knew or were put on notice during these procedures that [the] elevator . . . was defective,"[25] and there was "no evidence that [the] maintenance procedures, as formulated or as carried out, were not in conformity with [the elevator manufacturer's maintenance] guidelines."[26] Here, however, there was evidence that Kone had breached industry standards for proper elevator maintenance and inspection and that, absent that breach, the cause of the misleveling would have been identified

---

[23] See generally *Ruben's Richmond Dept. Store v. Walker*, 227 Ga. App. 867, 868 (1) (490 SE2d 536) (1997); *Gaffney*, supra.

[24] 287 Ga. App. 304, 308-310 (2) (653 SE2d 59) (2007) (affirming grant of summary judgment to premises owner and elevator maintenance provider where plaintiff failed to show defendants' superior knowledge of the defective condition).

[25] Id. at 308 (2).

[26] Id. at 305.

10

and Kone would have known what corrections were needed.[27] Further, unlike the instant case, *Brady* did not involve a spoliation issue.[28]

2. *Spoliation of evidence*. Cole CC and CFG assert that the court properly granted their motion for summary judgment because there is no evidence that the mis-leveling on the date of the incident was due to a defect, and an inspection conducted after the incident revealed no problems with the elevator. Regarding OCGA § 8-2-106, they assert that a tenant of the building, not Cole CC or CFG, moved the elevator before an inspection could occur, and that they complied with the statute once they learned of the incident.

However, Hill contends that the trial court erred by granting summary judgment to Cole CC and CFG because any lack of evidence showing the existence of a defect on the date of the accident was due to spoliation.

---

[27] *Hill I*, supra at 718-719.

[28] See *Brady*, supra. See generally *Benefield v. Tominich*, 308 Ga. App. 605, 609 (1) (708 SE2d 563) (2011) ("in order to prevail at the summary-judgment stage based on a lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident") (footnote and punctuation omitted) (physical precedent only). The spoliation issue in the instant case is discussed in Division 2, infra.

11

As the court stated in *Hill I*, there was evidence that the elevator at issue was not removed from service at the time of the accident and was placed back in service before inspection.[29] The appellees' failure to comply with the statute, whether intentionally or by mistake, constituted a form of spoliation, rendering summary judgment inappropriate.[30]

*Judgment reversed. Doyle, C. J., and Boggs, J., concur*.

---

[29] *Hill I*, supra.

[30] See id.; *Thomas v. MARTA*, 300 Ga. App. 98-102 (1) (684 SE2d 83) (2009); *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (1) (484 SE2d 249) (1997).