**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 21, 2020**

# In the Court of Appeals of Georgia

A19A2012. CITY OF ATLANTA v. DALE.

McFADDEN, Chief Judge.

This is an appeal from a judgment on a jury verdict in favor of plaintiff Pamela Dale in her personal injury action against the City of Atlanta. Dale was badly injured after driving into an open manhole on a section of Peachtree Road located in the city. She sued the city, arguing that the manhole was a public nuisance because it sat several inches below the surface of the street, which heightened the risk that its cover would become dislodged. But she did not present evidence that the manhole was in that condition on the day of the incident or that the city had notice of that condition before the incident. So Dale did not establish all of the elements required to hold the city liable for a public nuisance and the trial court erred in denying the city's motion for directed verdict. We therefore reverse.

1. *Facts.*

"A motion for directed verdict shall be granted only '(i)f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' OCGA § 9-11-50 (a)." *Norfolk Southern Corp. v. Smith*, 262 Ga. 80, 83-84 (2) (414 SE2d 485) (1992). On appellate review from a denial of a motion for directed verdict, we consider whether "there is any evidence to support the jury's verdict, and in conducting this analysis we must construe the evidence in the light most favorable to the party who prevailed in the court below." *Lee v. Swain*, 291 Ga. 799, 800 (1) (733 SE2d 726) (2012).

So viewed, the trial evidence showed that on August 13, 2016, Dale was seriously injured when she hit an uncovered manhole while driving on Peachtree Road. Photographs taken more than a year after the collision depicted the manhole in a deteriorated condition: its opening was several inches lower than street level and cracks in the surrounding pavement indicated structural problems. Dale's expert witness opined that this condition created an increased risk that the manhole cover would become dislodged.

The city does not have a practice of inspecting manholes absent a reported problem with them. A witness who testified on behalf of the city pursuant to OCGA

2

§ 9-11-30 (b) (6) stated that, according to a "Manhole Condition Assessment" report, the manhole in this case had last been inspected in 2009.[1] That report did not address the manhole's position in relation to the level of the street. Dale's expert, however, opined that the "Manhole Condition Assessment" report did not concern the manhole in question. The city had no other records pertaining to the condition of the manhole and was unaware of any previous accidents related to the manhole.

2. *The evidence did not establish all of the elements of Dale's nuisance claim against the city.*

A municipality "may be held liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function[.]" *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (256 SE2d 782) (1979) (citation omitted). An action against a municipality for liability based on a nuisance requires the following showings:

(1) The defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. (A single isolated act of negligence is not sufficient to show such a negligent trespass as would

---

[1] The "Manhole Condition Assessment" report is an exhibit to the deposition of the 30 (b) (6) witness. During trial, that deposition was read into evidence and the trial court made the deposition transcript and exhibits a part of the record, although the record does not reflect that the report itself was a trial exhibit.

constitute a nuisance.) (2) The act must be of some duration . . . and the maintenance of the act or defect must be continuous or regularly repetitious. (3) Failure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition.

Id. at 811 (2) (citations and punctuation omitted).Whether these elements are met "is generally a fact question for a jury. However, some factual settings turn the issue into one of law." *City of Atlanta v. MARTA*, 262 Ga. 743, 745 (425 SE2d 862) (1993) (citation omitted).

In this case, there is no fact question regarding these elements because there is no evidence that the defect asserted by Dale — the deteriorated condition of the manhole depicted in the photographs — existed on or before the day of the incident. The photographs were taken more than a year later and, by themselves, do not create a question of fact as to how long the manhole had existed in that condition. See *City of St. Mary's v. Reed*, 346 Ga. App. 508, 510 (816 SE2d 471) (2018) (photographs of crack in sidewalk that were taken at some point after plaintiff's trip and fall do not support conclusion about age of alleged defect in roadway); *City of Macon v. Brown*, 343 Ga. App. 262, 265 (807 SE2d 34) (2017) (same, regarding photographs of broken pavement surrounding manhole that were taken two weeks after accident allegedly caused by manhole). They "do not establish how long the [condition] took to develop

4

and worsen, and [there is no] additional evidence to contextualize or lend support to [Dale's] arguments regarding the [condition of the manhole one year earlier]." *City of Macon*, supra. Dale's expert witness did not discuss whether the condition of the manhole shown in the photographs also existed on the day of the incident; he merely gave an opinion based on those photographs, conceding that he did not know when they were taken. Dale could not testify to the manhole's condition at the time of the incident because she did not see it before hitting it. And no other witness testified that the photographs of the manhole are consistent with how the area looked at the time of the incident. Compare *Godinho v. City of Tybee Island*, 231 Ga. App. 377, 379 (2) (499 SE2d 389) (1998) (witnesses testified about how scene depicted in photographs looked on day of incident), reversed on other grounds by *City of Tybee Island v. Godinho*, 270 Ga. 567 (511 SE2d 517) (1999).

Dale argues that there is evidence that the condition depicted in the photographs dated back to 2009, when the manhole was last inspected, because the city's 30 (b) (6) representative testified that inspections only occurred in response to a reported problem. But there is no evidence that any problem that existed in 2009 concerned the same condition seen in the photographs. The only evidence arguably pertaining to the condition of the manhole in 2009 is the "Manhole Condition

5

Assessment" that, as discussed above, Dale's expert witness testified neither concerned the manhole in question nor addressed the alleged defect.

Dale argues that under the statute governing spoliation of evidence, OCGA § 24-14-22, the jury could presume that the 2009 inspection arose from a complaint about the same deteriorated condition shown in the photographs. But this spoliation presumption is a sanction for exceptional cases involving, among other things, bad faith on the part of the spoliating party, and it was for the trial court, in the exercise of his wide discretion, to decide whether such a sanction was appropriate. See *Wilkins v. City of Conyers*, 347 Ga. App. 469, 473 (819 SE2d 885) (2018); *Sheats v. Kroger Co.*, 342 Ga. App. 723, 726-727 (1) (805 SE2d 121) (2017); *Jones v. Medical Center of Central Ga.*, 341 Ga. App. 888, 893 (4) (802 SE2d 286) (2017). The issue of the spoliation presumption does not appear to have been raised to the trial court; the trial court did not charge the jury on that presumption, and the record does not show that Dale requested such a charge. Under these circumstances, we will not decide in the first instance to apply the presumption set forth in OCGA § 24-14-22.

In summary, "[w]hile the photographs [in this case] may provide some basis for inferring age, without context or explanation, any conclusion as to the age of the [deteriorated condition of the manhole] would be mere speculation." *City of Macon*,

6

343 Ga. App. at 265. As a matter of law, Dale did not establish that the alleged defect on which she built her claim — the deteriorated condition of the manhole — existed on or before the day she collided with the open manhole, and so to the extent her claim rests on that alleged defect she did not demonstrate the elements of nuisance.

Even if we consider the defect instead to be the open manhole itself, Dale still did not demonstrate the elements of nuisance because there is no evidence of any other instance where the manhole in this case was without its cover, much less evidence that the open manhole was a repetitive and continuous condition. "A single isolated act of negligence is not sufficient to show such a negligent trespass as would constitute a nuisance." *City of Bowman*, 243 Ga. at 811 (2). See *Goode v. City of Atlanta*, 274 Ga. App. 233, 236 (2) (617 SE2d 210) (2005) (where evidence shows at most that plaintiff's harm was caused by isolated act of negligence, first two elements of nuisance claim are not met). Cf. *Mayor & Aldermen of the City of Savannah v. Herrera*, 343 Ga. App. 424, 435-436 (4) (808 SE2d 416) (2017) (jury question existed as to whether tree obstructing motorists' line of sight constituted nuisance even though there was only one prior documented accident implicating tree, where evidence showed that obstructed view had existed for over ten years and many "near misses" had occurred at intersection).

7

Moreover, there is no evidence that the city had or was chargeable with knowledge of either the general deteriorating condition of the manhole or the fact that it was missing its cover on the day of the incident. See *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528, 531 (3) (307 SE2d 47) (1983) (finding fact question regarding city's knowledge of claimed nuisance — power pole alleged to be too close to public road — where pole had been in place for 24 years during which it had sustained scrape marks from passing vehicles). As discussed above, there is no evidence of the length of time (if any) the alleged defect existed before the accident, and thus there is no basis to infer that the 2009 inspection concerned the specific defective condition at issue in this case. See *Thompson v. City of Atlanta*, 274 Ga. App. 1, 4 (2) (616 SE2d 219) (2005) (city was entitled to judgment as matter of law on plaintiff's nuisance claim where plaintiff's argument regarding notice relied on inference based on uncertain or speculative evidence).

Dale points to the city's lack of a regular practice of inspecting potholes as evidence of its constructive knowledge. Such evidence could support liability against a private premises owner in a slip-and-fall action, even if the plaintiff in that action did not show how long the hazard had been present. See *Lomax v. The Kroger Co.*, 348 Ga. App. 726, 729 (1) (824 SE2d 629) (2019). But in an action seeking to impose

8

liability on a municipality, a plaintiff must show a higher degree of culpability; mere negligence is not enough. See *City of Bowman*, 243 Ga. at 811 (2). "[T]o hold that [the c]ity should have known of the problem and corrected it, even without any record of complaints or accidents *attributed to the defect*, is to impose a standard of ordinary care, rather than the proper standard requiring a showing that the maintenance of the defect exceeded mere negligence." *Shuman v. City of Savannah*, 180 Ga. App. 427, 428 (349 SE2d 239) (1986) (punctuation omitted; emphasis supplied).

Because the trial evidence did not show all of the required elements of Dale's nuisance claim, the city was entitled to a directed verdict.

*Judgment reversed. McMillian, P.J., and Senior Appellate Judge Herbert E. Phipps concur*.